UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

DONTIE S. MITCHELL,

                Petitioner,

        V.

SUPERINTENDENT, Southport
Correctional Facility,

                Respondent.
───────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

03-CV-19

## I. INTRODUCTION

Petitioner, Dontie Mitchell, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is presently an inmate at the Upstate Correctional Facility. In 1997, he was convicted in a New York State court of First Degree Robbery, First Degree Attempted Robbery, Second Degree Criminal Possession of a Weapon, Fourth Degree Grand Larceny, First Degree Criminal Use of a Firearm, and Fifth Degree Possession of Stolen Property, and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 45).

## II. BACKGROUND

**A.    Facts**

The following factual summary is derived from the testimony at Petitioner's trial. During the months of January and February of 1997, Petitioner, then seventeen years old, committed numerous robberies throughout the City of Albany. (T at 267-).[1]  The robberies ended with a February 11, 1997 armed robbery of a McDonald's restaurant on Holland Avenue in Albany, during which Petitioner fired his gun and locked the employees in the freezer while he fled with over one thousand dollars. (T at 261).

During the course of an ongoing investigation into the robberies, Albany Police detectives Cartwright and Politi received information that two of the robbery suspects had been involved in a criminal trespass just outside of Albany in the Town of Bethlehem.  (T at 302).  One of the suspects was arrested by the Town of Bethlehem Police, but the second eluded arrest.  Petitioner was seen by detectives Cartwright and Politi at a Stewart's market near the site of the criminal trespass.  (T at 303).  The detectives drove by the store several times to observe Petitioner because he matched the description of the suspect they were pursuing for the Albany robberies, as well as the criminal trespass in Bethlehem. (T at 303).  Petitioner seemed to be paying an inordinate amount of attention to them. (T at 303).

The detectives entered Stewart's and asked Petitioner what his name was and what he was doing in the area.  (T at 303).  The detectives advised Petitioner that they were conducting a criminal investigation and asked him to accompany them to the police station

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

to assist with their investigation.  (T at 308).  Petitioner agreed to do so, and after being given his *Miranda*[2] warnings at the police station, he confessed that he committed the string of robberies.  (T at 155, 169, 173-74, 308, 258-60, 267-69).  Petitioner agreed to reduce his confession to a writing, which he then signed.  (T at 173-74, 263-64, 267-69).

On April 22, 1997, an Albany County Grand Jury issued a nine count indictment, numbered 12-5181,[3] against Petitioner.  The indictment charged Petitioner in the first and fourth counts with Robbery in the First Degree, in violation of New York Penal Law ("N.Y.P.L.") §160.15(4);[4] in the second and third counts with Attempted Robbery in the First Degree, in violation of N.Y.P.L. §110.00, as further defined in §160.15(4); in the fifth count with Criminal Use of a Firearm in the First Degree, in violation of N.Y.P.L. §265.09(1)(b); in the sixth count with Grand Larceny in the Fourth Degree, in violation of N.Y.P.L. §155.30(1); in the seventh and eighth counts with Criminal Possession of a Weapon in the Second Degree, in violation of N.Y.P.L. §265.03; and in the ninth count with Criminal Possession of Stolen Property in the Fifth Degree, in violation of N.Y.P.L. §165.40.

## B.    State Trial Court Proceedings

The Honorable Thomas A. Breslin, Albany County Court Judge presided over Petitioner's trial court proceedings.  Before the start of trial, Petitioner made a motion to

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)(excluding confessions acquired though custodial interrogations unless adequate warnings were administered and waiver of rights obtained).

[3] Petitioner's co-defendants, Darrell Chapman and Reggie Richardson, were also indicted by the same nine count indictment issued by the Albany County Grand Jury.

[4] Unless indicated, all references to the N.Y.P.L. are to McKinney 1998.

preclude his statements to the police on the grounds that they were obtained as a result of an illegal search and seizure.  (R at 24-57)[5].   He also made a motion to suppress any physical evidence that was seized.  (Id.).  A suppression hearing was held before Judge Breslin on September 3, 1997.[6]  Following the hearing, Judge Breslin denied Petitioner's motions and allowed his statements and the physical evidence to be used at trial.  (R at 279-91).

Petitioner's trial began on October 20, 1997.  The jury found Petitioner guilty of the two counts of Attempted Robbery in the First Degree, one count of Robbery in the First Degree, Criminal Use of a firearm in the First Degree, Grand Larceny in the Fourth Degree, and two counts of Criminal Possession of a Weapon in the Second Degree. (T at 671-76).

Judge Breslin sentenced Petitioner on December 23, 1997. For each of his two convictions of Attempted Robbery in the First Degree, Petitioner was sentenced to an indeterminate term of seven and one-half years to fifteen years (to run consecutively); for his conviction of Robbery in the First Degree, Petitioner was sentenced to an indeterminate term of twelve and one-half years to twenty five years (to run consecutive to the attempted robbery sentences); for his conviction of Criminal Use of a Firearm in the First Degree, Petitioner was sentenced to an indeterminate term of twelve and one-half years to twenty five years (to run concurrent to his Robbery and Grand Larceny sentences and consecutive to the Attempted Robbery sentences and the Criminal Possession of a Weapon

---

[5]References preceded by "R" are to the pages of the State Court Record provided in this case.

[6]The portion of the hearing dedicated to determining  the voluntariness of a criminal defendant's statements to the police is referred to as a *Huntley* hearing pursuant to  People v. Huntley, 255 N.Y.S.2d 838 (1965).  The other portion of the hearing dedicated to determining the admissibility of the physical evidence is referred to as a *Mapp* hearing pursuant to Mapp v. Ohio, 367 U.S. 643 (1961).

sentences); for his conviction of Grand Larceny in the Fourth Degree, Petitioner was sentenced to an indeterminate term of one and a third year to four years (to run concurrent to his Robbery and Criminal Use of a Firearm sentences and consecutive to the Attempted Robbery sentences and the Criminal Possession of a Weapon sentences); and for each of his two convictions of Criminal Possession of a Weapon, Petitioner was sentenced to an indeterminate term of seven and one-half years to fifteen years (to run concurrent to each other, but consecutive to all the other sentences).  (R at 449-51).  His cumulative total sentence was 48 years, 10 months to 99 years in prison.


**C.      State Appellate Proceedings**

Petitioner, acting *pro se*, then appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner raised the following six arguments in support of his appeal: (1) that the trial court erred in denying his motion to suppress his incriminating statements and the physical evidence that was seized as the result of his illegal stop, detention, custody, seizure and arrest, (2) that the trial court erred in denying his motion to suppress the physical evidence illegally seized from his apartment, (3) that Petitioner's conviction on two counts of Criminal Possession of a Weapon were against the weight of the evidence, (4) that his conviction should be reversed with respect to the two counts of Criminal Possession of a Weapon for judicial misconduct in making a finding of fact that was unsupported by the record, (5) that his incriminating statements should have been suppressed because he was coerced, threatened, and assaulted into giving them, and (6) that his sentence was unduly harsh and severe.

In a decision issued on May 17, 2001, the Appellate Division, Third Department

5

affirmed Petitioner's conviction.  People v. Mitchell, 724 N.Y.S.2d 229 (3d Dep't 2001).  The Appellate Division found that Petitioner did not preserve his claims for their review or that they were without merit, with the exception of his first claim.  Id.  With respect to Petitioner's first claim that his statements and physical evidence should have been suppressed because they were the result of an illegal detainment, the appeals court found that although the Albany Police detectives were outside of their jurisdiction, Petitioner's behavior and response to their questions gave them justification to ask Petitioner to accompany them to the police station.  Id. (citing People v. Hollman, 581 N.Y.S.2d 619 (1992)(a simple request for information need only be supported by an articulable reason justifying the action).  On October 29, 2001, the New York Court of Appeals denied Petitioner's application for leave to appeal.  People v.Mitchell, 97 N.Y. 2d 642 (2001).

Thereafter, Petitioner filed a complaint in federal court pursuant to 42 U.S.C. § 1983 against the New York State Supreme Court, Appellate Division, Third Department. Petitioner alleged that the appeals court violated his constitutional rights by denying his claims of unlawful detention and relying on false and unsupported findings of fact when deciding his direct appeal.  The Honorable Lawrence E. Kahn, United States District Court Judge for the Northern District of New York, dismissed Petitioner's complaint.  Petitioner then appealed that dismissal to the Second Circuit Court of Appeals, which affirmed Judge Kahn's dismissal.  See Mitchell v. New York State Supreme Court, 53 Fed.Appx. 589 (2d Cir. Dec. 23, 2002).

Petitioner also made a motion for reconsideration to the Appellate Division, Third Department raising the same argument, namely that the appeals court improperly relied upon false and unsupported findings of fact in its decision affirming Petitioner's conviction.

6

Petitioner's motion was denied on February 22, 2002.  <u>People v. Mitchell</u>, 97 N.Y.2d 731 (2002).

Lastly, Petitioner brought a motion for a Writ of Error Coram Nobis before the Appellate Division, Third Department on the same theory that the court's decision affirming his conviction on false and unsupported findings of fact violated Petitioner's right to due process.  On August 21, 2002, Petitioner's motion was denied.  <u>See</u> (Docket No. 1 at 4).

### D.    Federal Habeas Corpus Proceedings

Petitioner commenced this action on January 3, 2003, by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  The Petition asserted a single claim -- that Petitioner's right to due process was violated by the Appellate Division's decision affirming his conviction based upon false and unsupported findings of fact.  Thereafter, Judge Kahn ordered Petitioner to file an Amended Petition setting forth factual support for his habeas claim.  <u>See</u> (Docket No. 8).

On May 13, 2003, Petitioner filed an Amended Petition asserting two claims for habeas relief. (Docket No. 12).  His first claim was the same as in his original Petition and his second claim was that his conviction was "predicated upon the introduction of incriminating statements, attributable to [him], at [his] trial that were obtained in violation of the Fifth Amendment."  <u>See</u> (Docket No. 12 at 8).  Judge Kahn then ordered Petitioner to file a Second Amended Petition including specific dates of when he filed his various appeals, so that the Court could determine whether the habeas petition was timely.

(Docket No. 15).  Petitioner filed his Second Amended Petition on July 18, 2003.[7]  (Docket No. 16).  Petitioner asserts the same two grounds in his Second Amended Petition that he did in his Amended Petition.  Thereafter, the Respondent filed submissions in opposition. (Docket No. 25).

For the reasons that follow, the Court recommends that Mitchell's petition for a writ of habeas corpus be denied and that his petition be DISMISSED.

## III. DISCUSSION

### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state

_____

[7]Based upon the dates submitted in Petitioner's Second Amended Petition, his habeas corpus petition appears to be timely filed.

court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  Id.

Under this standard, "a federal habeas court may not issue the writ simply because

9

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

    **1.    Due Process**

        **a.    Meaningful Appeal**

In his first claim for relief, Petitioner argues that he was deprived of his due process right to a full, fair, and meaningful appeal. On appeal to the Appellate Division, Petitioner argued that the trial court erred in denying his motion to suppress because the police officers lacked an "articulable reason" for stopping and questioning him, in violation of the New York standard for police questioning established in People v. DeBour, 40 N.Y. 2d 223 (1976).

The Appellate Division affirmed the trial court, finding that due to Petitioner's "false responses to the informational questions posed, the detectives were justified in proceeding to the second level of inquiry and, thus, their inquiry as to whether defendant was willing to accompany them to headquarters was permissible." Mitchell, 724 N.Y.S.2d at 231. Further, the appeals court noted "that the record suggests that the detectives had a description of the perpetrator of the Albany robberies and that defendant fit that description

. . . [and] [t]hat fact alone would justify a common-law inquiry." Id.

In support of his habeas corpus claim, Petitioner argues that the Appellate Division's decision was based upon "patently erroneous and unsupported factual findings." Specifically, he challenges the credibility of the police testimony offered at the suppression hearing and argues that the Appellate Division drew unsupported inferences from that testimony.  Petitioner contends that the Appellate Division thereby failed to provide him with meaningful appellate review, depriving him of due process under the Fourteenth Amendment.

"Although there is no due process right to an appeal, when a state does provide for an appeal, that appeal must accord with due process . . . ." Simmons v. Reynolds, 898 F.2d 865, 868 (2d Cir. 1990).  New York State affords criminal defendants with an appeal as of right.  As such, courts in this Circuit have held that a defendant convicted in New York has certain procedural due process rights when appealing a conviction.  For example, the Second Circuit has recognized a right to counsel on appeal.  See Taveras v. Smith, 463 F.3d 141, 146-47 (2d Cir. 2006).  In addition, due process requires that a defendant's appeal be heard and determined within a reasonable time.  See Simmons, 898 F.2d at 868.

However, Petitioner failed to cite, and this Court could not find any authority that would support a *substantive* due process challenge to the reasoning process of the appellate court.[8]  In other words, there does not appear to be any constitutional right to challenge the depth or adequacy of state court appellate review on due process grounds. Indeed, at least one court in this Circuit has rejected a petitioner's claim that he was denied

---

[8]Indeed, Petitioner conceded that his claim was "novel" and lacking direct case law support. (Docket No. 18 "Petitioner's Memorandum of Law in Support of Second Amended Petition", at p. 1).

due process because the Appellate Division's decision was "vague and insufficient." Galvin v. Kelly, 79 F. Supp.2d 265, 273-74 (W.D.N.Y. 2000).

In addition, the fact that a state appellate court may issue a one word denial of a defendant's claim without offending the Constitution, Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001), also indicates that a petitioner cannot assert a due process claim based upon an alleged defect in the appellate review process.  Under AEDPA, the focus of the habeas court is on the ultimate *decision* of the state appeals court, rather than upon the particular reasoning employed. Id.

Moreover, an expansion of substantive due process review, as urged by Petitioner here, would be inconsistent with the limited purposes of habeas review.  Bentley v. Scully, 41 F.3d 818, 823 -824 (2d Cir. 1994) ("Direct review is the principle avenue for challenging a conviction . . . [and when this process] 'comes to an end, a presumption of finality and legality attaches to the conviction and sentence'")(quoting Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983)).  "[W]hile federal habeas proceedings are important to ensure that constitutional rights are observed, their role is 'secondary and limited.'" Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 1719 (1993)).

Lastly, the customary habeas corpus standard under § 2254 provides a mechanism for Petitioner to obtain a review of his conviction.  As set forth above, § 2254 provides for review of the state court's adjudication to determine whether that adjudication was either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  As such, Petitioner's argument that the Appellate Division's

decision was unreasonable in light of the evidence presented could have, and should have, been presented as a customary habeas corpus challenge; rather than as a novel "due process" claim.  However, due to Petitioner's *pro se* status, this Court will construe his Petition as challenging the Appellate Division's decision pursuant to the customary § 2254 standard.

### b.   Suppression of Evidence

This Court will construe the *pro se* Petition as asserting a Fourth Amendment claim based upon the Appellate Division's ruling concerning the suppression of evidence. Specifically, this Court will construe the Petition as arguing that the Appellate Division's decision affirming the suppression of evidence was based on a unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

As noted above, two police detectives approached Petitioner in a Stewart's store and questioned him.  The detectives believed that Petitioner's answers to their questions were inconsistent and based on that belief asked him to accompany them to the police station. Petitioner agreed to do so and provided a confession at the police station.

Prior to trial, Petitioner moved to suppress his confession on the grounds that his statements were the result of an illegal seizure effected by the detectives at the Stewart's store.  The trial court denied the suppression motion and its decision in this regard was affirmed by the Appellate Division.  Mitchell, 724 N.Y.S.2d at 231.  Petitioner argues that the factual record did not support the denial of the suppression motion and that the statements should have been suppressed pursuant to People v. DeBour.

In Stone v. Powell, 428 U.S. 465, 482 (1976), the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment

13

claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (emphasis added).   Following Stone, the Second Circuit developed a "litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims."  Capellan v. Riley, 975 F.2d 67, 69-71 (2d Cir. 1992)(citing Gates v. Henderson, 568 F.2d 830 (2d Cir. 1977)(en banc)).

The Second Circuit has concluded that review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances: (a) if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an "unconscionable breakdown in the underlying process." Id. (quoting Gates, 569 F.2d at 840 and citing McPhail v. Warden Attica Correctional Facility, 707 F.2d 67, 70 (2d. Cir 1983)).

"The federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710. 10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate.'" Capellan, 975 F.2d at 70 n.1 (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing Gates, 568 F.2d at 837 & n.4; Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)).

In the present case, Petitioner was afforded with an opportunity to litigate his suppression claim in the state courts.  A suppression hearing was held and Petitioner was afforded with an opportunity to cross-examine the prosecution's witnesses and to provide testimony on his own behalf.  Petitioner also availed himself of the opportunity to seek appellate review of the trial court's decision denying his suppression motion.

14

This Court finds that there is no evidence of an "unconscionable breakdown" in the underlying process.  Petitioner's disagreement with the outcome does not qualify as "unconscionable breakdown" under the Stone standard.  See Hernandez v. Filion, No. 05-Civ-4046, 2005 WL 3164063, at * (S.D.N.Y. Nov. 29, 2005) ("A 'mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.'").

Further, to the extent that Petitioner's claim is based upon a disagreement with the factual findings of the state courts, those findings are entitled to a presumption of correctness and Petitioner has failed to overcome that presumption with "clear and convincing evidence." Id. (quoting 28 U.S.C. § 2254 (e)(1)).  Both the trial court and the Appellate Division credited the police testimony concerning the basis for the investigative questioning.  Those findings as to credibility carry a presumption of correctness and this Court finds that Petitioner has not provided clear and convincing evidence that the findings were erroneous.[9]  See Persad v. Greiner, 337 F.3d 175, 181 (2d Cir.2003).

Finally, it is important to note that the Appellate Division concluded that the police questioning of Petitioner at the Stewart's store did *not* rise to the level of a "stop and frisk" pursuant to Terry v. Ohio, 392 U.S. 1 (1968).  Under Terry, it is well-settled that a person is not "seized" for purposes of the Fourth Amendment "simply because a police officer approaches . . . and asks a few questions." United States v. Robinson, No. 04-CR-150A,

---

[9]As noted above, Detective Cartwright testified at the suppression hearing that the detectives' suspicion was aroused based upon several answers provided by Petitioner, which the detectives believed were inconsistent.  Both the trial court and Appellate Division found Cartwright credible.  Petitioner argues that his answers to the officers' questions were not actually inconsistent and, thus, Cartwright's testimony was not credible.  However, it is not this Court's function on habeas review to evaluate *de novo* the credibility of witnesses.  Rather, Petitioner must provide clear and convincing evidence that the decisions of the state courts were unsupported by the factual record.  Petitioner has not met this burden.

2005 WL 711623, at *3 (Mar. 29, 2005).  In other words, under the Fourth Amendment, "[a] police officer is free to approach a person in public and ask a few questions; such conduct, without more, does not constitute a seizure." Id. (citing Florida v. Roper, 460 U.S. 491 (1983)).  This would be particularly true when, as in this case, the officers are drawn to an individual because he or she matches the description of a perpetrator.

The Appellate Division's conclusion that the police conduct did not constitute a "seizure" under Terry was clearly supported by the factual record, which indicated that the police questioning was consensual, that Petitioner was not handcuffed, and that he was specifically advised that he was not under arrest. (R. at 112-114).  To the extent Petitioner's challenge is based upon New York law, namely,  People v. DeBour, which provides for heightened scrutiny of police encounters, such a challenge does not provide a basis for granting habeas corpus relief. See Acosta v. Couture, No. 99-CIV-9727, 2003 WL 272052, at *5 (S.D.N.Y. Jan. 23, 2003) (finding that petitioner's DeBour claim was not reviewable because it was "decided by a New York State court relying substantively on New York case law").

For the foregoing reasons, this Court recommends that Petitioner's first claim for habeas relief be DENIED.

### 2.    Fifth Amendment

Petitioner's second claim for relief is that his confession should have been suppressed because it was obtained in violation of his Fifth Amendment rights. Specifically, Petitioner contends that his confession was the product of unconstitutional "overbearing police pressure."

The Second Circuit has held that "[t]he police may use a defendant's confession

16

[obtained during a custodial interrogation] without transgressing his Fifth Amendment right only when the decision to confess is the defendant's free choice." Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (quoting United States v. Anderson, 929 F.2d 96, 98 (2d Cir.1991)). "The prosecution bears the burden of demonstrating by a preponderance of the evidence that a confession was voluntary." Id.

On habeas corpus review, the issue of voluntariness is a legal question, based upon a totality of the circumstances and requiring an "independent federal determination." Id. (quoting Arizona v. Fulminante, 499 U.S. 279, 287, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991)). "No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." Id. (quoting Green v. Scully, 850 F.2d 894, 901 (2d Cir. 1988)).

In the present case, after the suppression hearing, the trial court made detailed factual findings in support of its conclusion that Petitioner's statements to the police were voluntary. (R. at 281-284). The Appellate Division affirmed without elaboration. Mitchell, 724 N.Y.S.2d at 231 (finding balance of Petitioner's arguments either "unpreserved or without merit"). The trial court's findings were based upon an extensive development of the record via a suppression hearing involving the testimony of multiple witnesses, including Petitioner. As such, the trial court's factual findings are entitled to a presumption of correctness. Nelson, 121 F.3d at 833-34; see also Towndrow v. Kelly, 98-CV-0509, 2000 WL 33743385, at *4 (N.D.N.Y. Dec. 20, 2000) ("Factual findings relevant to the voluntariness of a habeas petitioner's confession made by the state court are entitled to the presumption of correctness; a petitioner is required to rebut this presumption by clear and

convincing evidence.").

After carefully conducting an independent review of the record, this Court finds that Petitioner has failed to demonstrate by clear and convincing evidence that the trial court's factual findings regarding the voluntariness of his statements were based on an unreasonable determination of the facts in light of the evidence presented.

To wit, testimony at the hearing revealed that Petitioner was given his <u>Miranda</u> warnings on multiple occasions, that he understood his rights and agreed to answer questions (R at 29-30, 62, 64, 70, 76-77, 79, 81, 84, 92-93, 118), that Petitioner was provided with a meal during the questioning (R. at 83-84), he never asked to speak with an attorney (R at 30) and voluntarily signed written statements summarizing his verbal admissions. (R at 31-32, 67, 78-79, 81).  The trial court's decision to accept the foregoing testimony rather than Petitioner's testimony regarding the circumstances surrounding the interrogation is supported by substantial evidence in the factual record and, thus, will not be disturbed by this Court. <u>Nelson</u>, 121 F.3d at 834-35; <u>see also Ravello v. Donnelly</u>, 02-CV-5784, 2004 WL 951575, at *4-*5 (E.D.N.Y. May 3, 2004); <u>Mastin v. Senkowski</u>, 297 F. Supp.2d 558, 601-605 (W.D.N.Y. 2003).

Accordingly, this Court finds that Petitioner is not entitled to relief based upon an alleged violation of the Fifth Amendment and his second claim for relief should therefore be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Dontie Mitchell's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be

dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a

constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C.

§ 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:        May 15, 2007

Syracuse, New York

## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report &

19

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.[10]

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

---

[10]According to the New York State Department of Correctional Services' official website, Petitioner is presently incarcerated in the Upstate Correctional Facility, therefore, the correct Respondent is Robert Woods, the Superintendent of the Upstate Correctional Facility.  28 U.S.C. § 2243.  In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the Petition amended to change the name of Respondent to Robert Woods.

The Clerk of the Court is directed to terminate "Superintendent" as Respondent, add Robert Woods, Superintendent of the Upstate Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

SO ORDERED.

May 15, 2007

Victor E. Bianchini
United States Magistrate Judge